UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HENRY G LUKEN III,<br><br>                Plaintiff,<br>     v.<br><br>CHRISTENSEN GROUP INCORPORATED, et al.,<br><br>                Defendants. | CASE NO. C16-5214 RBL<br><br>ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND ON MOTION TO COMPEL |

THIS MATTER is before the Court on Plaintiff Henry Luken's Motion for Partial Summary Judgment [Dkt. #114] as well as CSL Defendants' Motion for Partial Summary Judgment [Dkt. #138] and Motion to Compel Production of Documents [Dkt. #118]. The underlying lawsuit involves numerous complicated claims and counterclaims over who is financially responsible for the failure of luxury yacht builder Christensen Shipyards. Luken alleges that the CSL Defendants engaged in mismanagement and fraud ultimately driving CSL into insolvency. The CSL Defendants characterize Luken as a corporate raider who is attempting to complete his hostile takeover of CSL through this litigation. The present summary judgment motions relate to claims stemming from a 2001 Guaranty between Luken and Defendant David Christensen, Luken's claims under Washington's vessel dealer trust account statute (RCW §

88.02.770), and CSL Defendants' intentional interference and shareholder oppression counterclaims.

**A. Legal Standard**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

## II. LUKEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Luken moves for summary judgment on several issues related to a 2001 Guaranty agreement between David Christensen and Luken, on Defendants' intentional interference with contract claim (Fourth Counterclaim), and on Defendants' shareholder oppression claim (First Counterclaim).

**A. Claims related to the 2001 Guaranty between David Christensen and Luken.**

David Christensen and Luken executed an agreement in 2001 in which Luken provided financing to CSL for the construction of two spec boats and Christensen guaranteed CSL's loan obligations. Dkt. 114 at 4; Dkt. 114-1; Dkt. 130 at 7. The language of the Guaranty provides:

> The obligations of the Guarantor under this Agreement shall be absolute and unconditional, notwithstanding any notice of discontinuance delivered to the Lender, and shall remain in full force and effect until all the Obligations shall have been paid or satisfied in full . . . .

Dkt. 114-1 at 2.

Luken argues that the language in the agreement entitles him a broad and continuing guaranty of all indebtedness of any kind that CSL may owe him in the future. Dkt. 114 at 4. Luken contends that he is entitled to the $11.7 million maximum under the Guaranty and seeks summary judgment on several claims and defenses related to the Guaranty.[1] *Id*. at 12–13.

CSL Defendants assert that the 2001 Guaranty only applied to loan obligations that CSL, as a borrower, owed to Luken, as a lender (as opposed to any obligation CSL had as a yacht

---

[1] Luken moves for summary judgment on (1) "Mr. Luken's *prima facie* claim based upon the guaranty and subordination agreement signed by Defendant David Christensen;" (2) "each of Defendants' defenses to Mr. Luken's guaranty claim;" (3) "on the damages portion of Mr. Luken's guaranty claim;" and (4) "[d]etermining that there is no reason to delay entry of a partial judgment on Mr. Luken's guaranty claim pursuant to Fed. R. Civ. P. 54(b)." Dkt. 114 at 1–2.

seller to Luken as a yacht buyer). Dkt. 130 at 7–8. Defendants also contend that CSL satisfied the Guaranty by repaying all loan obligations in 2008.

The Court's review of the record reveals a genuine dispute of material fact as to whether or not the Guaranty was satisfied. Because the parties dispute whether CSL repaid Luken and satisfied its obligations under the Guaranty, summary judgment is inappropriate at this juncture. Accordingly, Luken's motion for partial summary judgment as it relates to the 2001 Guaranty [Dkt. 114 at ¶¶1–4] is **DENIED**.

**B. Intentional Interference Counterclaim**

Luken moves for summary judgment on Defendants' intentional interference with economic relations counterclaim. This counterclaim stems from a loan of approximately $1.1 million that David Christensen made to CSL in December 2011. Defendants allege that Luken abused his corporate position and engaged in a course of misconduct before and after the loan was made resulting in CSL's insolvency and subsequent inability to repay the loan. Dkt. 97 at 44–46.

To state a claim for intentional interference, a plaintiff must set forth the following elements: (1) the plaintiff was engaged in a valid contractual relationship or business expectancy; (2) the defendant knew of this relationship; (3) the defendant acted intentionally in inducing a breach or termination of the relationship; (4) the defendant was motivated by an improper purpose or used improper means; and (5) the plaintiff suffered damages as a result of the interference. *Kische USA, LLC v. Simsek*, No. C-16-0168JLR, 2016 WL 6273261, *9 (W.D. Wash. June 29, 2016); *Libera v. City of Port Angeles*, 316 P.3d 1064, 1068 (Wash. Ct. App. 2013).

Luken suggests that CSL Defendants cannot establish all elements of their intentional interference claim, arguing (1) Defendants have insufficient admissible evidence to support their

allegations of misconduct or improper purpose by Luken; (2) that simply contributing to CSL's inability to repay a loan is not actionable interference; and (3) that Defendants cannot show causation or damages. Dkt. 114 at 21–22. These arguments lack merit.

CSL Defendants present ample evidence of misconduct and improper purpose that goes beyond contributing to CSL's inability to repay the loan. This includes evidence or testimony which suggests Luken inflated the trade-in values on hull contracts, misappropriated CSL funds for personal expenses, forced CSL to sell the yacht Cacique to him at a loss, and provided insider information on CSL to his friends to the harm of CSL. Viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could find that Luken, motivated by improper purpose, engaged in a course of intentional conduct which caused CSL to default on its loan and harm Christensen. The Court determines that the CSL Defendants present sufficient evidence to satisfy the elements of their intentional interference counterclaim. There are genuine issues of material fact on this counterclaim that need to be resolved at trial. Accordingly, Luken's motion for partial summary judgment on the intentional interference counterclaim [Dkt. 114 at ¶5] is **DENIED**.

**C. Shareholder Oppression Counterclaim**

CSL Defendants David Christensen, Joe Foggia, and Cindi Curtin assert a counterclaim for shareholder oppression alleging that Luken, as CSL's controlling shareholder, abused his corporate position for his own personal benefit and engaged in oppressive conduct to the harm of CSL's minority shareholders. Dkt. 97 at 37–39. Christensen, Foggia, and Curtin contend that an award of damages is warranted for Luken's allegedly oppressive conduct considering that equitable remedies are insufficient given that CSL has been placed in receivership and liquidated. Dkt. 130 at 28–29. Luken moves for summary judgment on this claim, arguing his

ORDER ON CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND ON MOTION TO
COMPEL - 5

alleged misconduct is either not actionable or falls outside the statute of limitations. Dkt. 114 at 22–25.

Washington's Business Corporation Act authorizes the superior courts to dissolve a corporation if "the directors or those in control of the corporation have acted . . . in a manner that is illegal, oppressive, or fraudulent." Wash. Rev. Code § 23B.14.300.[2] Because the statute does not define the term "oppressive," Washington courts look to both a "reasonable expectations" test and a "fair dealing" test to evaluate whether a corporate director or controlling shareholder has engaged in oppressive conduct. *Scott v. Trans-System, Inc.*, 64 P.3d 1, 6 (Wash. 2003); *Miller v. Robertson*, 93 Wash. App. 1089 (Wash. Ct. App. 1999). The "reasonable expectations" test "defines shareholder oppression as a violation by the majority of the reasonable expectations of the minority," and is "most appropriate in situations where the complaining shareholder was one of the original participants in the venture—one who would have committed capital and resources." *Scott*, 64 P.3d at 6 (citing *Gimpel v. Bolstein*, 477 N.Y.S.2d 1014, 1018 (N.Y. Sup. Ct. 1984)).

The "fair dealing" test characterizes oppressive conduct as:

> burdensome, harsh and wrongful conduct; a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members; or a visible departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely.

*Id*. The two tests are not mutually exclusive and either or both may be used in the same case. *Id*.

---

[2] Although the typical remedy under this statute is judicial dissolution of the corporation, CSL Defendants argue that equitable remedies are inadequate due to the fact that CSL has been liquidated in receivership, and that damages are appropriate compensation for Luken's alleged corporate misconduct. Dkt. 130 at 28–29. The Court is not aware of, nor do the parties cite to any authority precluding damages for shareholder oppression claims. *See* Dkt. 141 at 15 ("Whether a shareholder may recover a share of the corporation's losses under [Washington's Business Corporation Act] is an open question . . . .").

1. CSL Defendants can establish a *prima facie* claim of shareholder oppression.

As with the previous counterclaim, Christensen, Foggia, and Curtin contend that Luken engaged in oppressive conduct by misappropriating funds from CSL for personal expenses, forcing CSL to sell yachts to his friends at a loss, providing insider information on CSL to his friends to the harm of CSL, engaging in credit arrangements that put his personal interests over those of the minority shareholders, and ultimately forcing CSL into receivership so he could buy its assets at a discount. Again, viewing the evidence in a light most favorable to the CSL Defendants as the nonmoving party, the Court determines that there is sufficient evidence to establish a shareholder oppression claim under either the "reasonable standards" or "fair-dealing" test.

2. The shareholder oppression counterclaim is not time-barred.

Luken also argues that Defendants' shareholder oppression counterclaim is time-barred because the alleged misconduct occurred beyond the statute of limitations contained in RCW § 4.16.130 (two years) and RCW § 4.16.080 (three years). Dkt. 114 at 23. CSL Defendants liken their shareholder oppression claim to one for a breach of fiduciary duty and contend that this claim did not accrue until CSL was forced into receivership on March 20, 2015. Both parties overlook the first proviso of Washington's general limitation statute: "[e]xcept as otherwise provided in this chapter, *and except when in special cases a different limitation is prescribed by a statute not contained in this chapter*, actions can only be commenced within the periods provided in this chapter after the cause of action has accrued." Wash. Rev. Code § 4.16.005 (emphasis added).

Defendants' shareholder oppression counterclaim is brought under Washington's Business Corporation Act. This act provides "[t]he dissolution of a corporation . . . shall not take away or impair any remedy available against such corporation, its directors, officers, or

shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution or arising thereafter," so long as the action commences "within three years after the effective date of any dissolution that is effective on or after June 7, 2006." Wash. Rev. Code § 23B.14.340. The statute clearly states that an action survives a corporation's dissolution and is timely if it is filed within three years of dissolution. Because the shareholder oppression counterclaim appears to have been filed within three years of CSL's dissolution, it is timely under the applicable limitations period. Accordingly, Luken's motion for summary judgment on the shareholder oppression counterclaim [Dkt. 114 at ¶6] is **DENIED**.

### III. CSL DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**A. Defendants' Motion for Summary Judgment on Luken's and Indian Marine's claims under Washington's vessel dealer trust account statute (RCW § 88.02.770).**

CSL Defendants move for summary judgment on four of Luken's claims related to Washington's vessel dealer trust account statute.[3] This statute requires that vessel dealers place a customer's cash or negotiable instrument deposits in excess of $1,000 in a separate trust account until the purchased vessel is delivered to the customer. Wash. Rev. Code § 88.02.770; *Venwest Yachts, Inc. v. Schweickert*, 176 P.3d 577, 578 (Wash. Ct. App. 2008). Luken alleges that Defendants violated the vessel dealer statute by failing to place his and Indian Marine's deposits for various yet-to-be completed yachts into a trust account. With respect to the claims Luken asserts on his own behalf, CSL Defendants argue that Luken's alleged deposit was his trade-in credit for a vessel under construction and not cash or a negotiable instrument as required by the statute. With respect to Luken's claims on behalf of Indian Marine, CSL Defendants argue that

---

[3] Luken asserts two claims (3 and 7) on behalf of himself, and two claims (4 and 8) on behalf of Indian Marine. *See* Dkt. 93 at ¶69 ("Mr. Luken purchased all of Indian Marine's rights relating to CSL, including its claims against Defendants and uncompleted Hull 42.").

Indian Marine's progress payments are not deposits, and that the payment provisions contained in the construction contract for Hull 42 displace the vessel dealer statute's deposit requirement.

1. <u>Luken's trade-in credit is not a cash or negotiable instrument deposit to which RCW § 88.02.770 applies.</u>

Luken alleges in the Second Amended Complaint that CSL Defendants violated RCW § 88.02.220[4] (Claim 3), and breached their fiduciary duties under RCW § 88.02.770 (Claim 7) by not placing his deposit or deposits for various yachts into a trust account. Dkt. 93 at 35–36. CSL Defendants argue that it is "undisputed that Luken's alleged deposit was his trade-in interest in a vessel under construction—not cash or a negotiable instrument as required for RCW 88.02.770 to apply." Dkt. 138 at 3.

The vessel dealer trust account statute provides:

> (1) A vessel dealer who receives cash or a negotiable instrument of deposit in excess of one thousand dollars, or a deposit of any amount that will be held for more than fourteen calendar days, shall place the funds in a separate trust account.
> The cash or negotiable instrument must be:
>   (a) Set aside immediately upon receipt for the trust account, or endorsed to the trust account immediately upon receipt; and
>   (b) Deposited in the trust account by the close of banking hours on the day following the receipt.
> (2) After delivery of the purchaser's vessel, the vessel dealer shall remove the deposited funds from the trust account.
> (3) The dealer shall not commingle the purchaser's funds with any other funds at any time.
> (4) The funds must remain in the trust account until the delivery of the purchased vessel. However, upon written agreement from the purchaser, the vessel dealer may remove and release trust funds before delivery.

Wash. Rev. Code § 88.02.770.

---

[4] RCW § 88.02.220 was recodified as RCW § 88.02.770 in 2011. *See* Wash. Rev. Code § 88.02.770.

1    Luken acknowledges that he "did have a yacht (Hull 20) constructed under a 1998 or so
2    contract. He took possession of that yacht, used it, and later traded it in on a bigger or better one
3    for a 'trade-in-credit' of $17.5 Million, and he signed a construction contract for Hull 27." Dkt.
4    143 at 2. The record suggests that Luken relinquished his interest in Hull 27 to CSL for
5    additional credit towards the construction of Hull 32. This hull-swapping process repeated with
6    Hulls 32, 36, 37, and 38, with Luken trading down to a future hull in exchange for additional
7    credit towards its construction. Although the hull-swapping arrangement between Luken and
8    CSL was somewhat convoluted, there is no evidence suggesting that Luken made a cash or
9    negotiable instrument deposit for Hulls 27, 32, 36, 37, or 38.

Nonetheless, Luken encourages the Court to "read the statute in the most liberal way and hold that the phrase 'or a deposit of any amount that will be held for more than fourteen days' makes the statute applicable here whether or not Mr. Luken's [sic] made a 'cash' deposit." Dkt. 143 at 6. The Court declines this invitation for several reasons. First, there is no need to engage in statutory construction where the statute is clear on its face. *See Washington v. Watson*, 51 P.3d 66, 69 (Wash. 2002). The Court determines that the language of the vessel dealer deposit statute is unambiguous: RCW § 88.02.770 applies to cash or negotiable instrument deposits only. Despite novel arguments for why his trade-in credit should be treated like cash, the fact remains that Luken did not make a cash or negotiable instrument deposit.

Second, even if the statute were ambiguous (which it is not), the interpretation that Luken advocates would require that the Court ignore the text specifying that the statute applies to deposits which are "cash or negotiable instruments." It is basic canon of statutory interpretation that a statute should be construed so that no clause, sentence or word shall be superfluous, void, or insignificant. *HomeStreet, Inc. v. State, Dept. of Revenue*, 210 P.3d 297, 301 (Wash. 2009)

(citing *Kasper v. City of Edmonds*, 420 P.2d 346, 349–50 (Wash. 1966)). Luken's preferred "liberal" interpretation rendering the "cash or negotiable instrument" language of the statute superfluous is an unacceptable result.[5]

   2. <u>Indian Marine's progress payments are not deposits, and even if they were, CSL's contract with Indian Marine would relieve any obligation under the vessel dealer statute to place the payments in a trust account.</u>

Luken also brings two claims under the vessel dealer trust account statute on behalf of Indian Marine.[6] Indian Marine entered into a contract with CSL in 2014 for the construction of a $34 million yacht designated as Hull 42. Dkt. 93 at ¶61. The contract established a monthly billing cycle and a schedule for progress payments by Indian Marine as construction charges accrued. Dkt. 145-1. Luken alleges in Claims 4 and 8 of the Second Amended Complaint that CSL Defendants submitted false billing statements for work that had yet to occur on Hull 42, resulting in inflated progress payments by Indian Marine. Luken argues that CSL Defendants violated the vessel dealer trust account statute and breached their fiduciary duty under that statute to hold in trust any progress payments from Indian Marine in excess of the money needed for construction of Hull 42. Dkt. 143 at 13. Luken argues "the court must liberally interpret and

---

[5] While the plain language of the statute is sufficient grounds for dismissing Luken's vessel dealer deposit claims, the Court also notes that Henry Luken is not a typical vessel purchaser. As an owner, board member, and regular customer of a company that manufactures luxury yachts, he is an extremely sophisticated vessel buyer. While the Court does not go so far as to adopt Defendants' argument that the Washington Legislature would not intend the vessel dealer trust account statute to apply to luxury yacht buyers like Luken, his experience and position within CSL's ownership weighs against "maximiz[ing] the statute's protective effect," as Luken advocates. *See* Dkt. 143 at 6.

[6] Luken purchased all of Indian Marine's rights relating to CSL, including its claims against Defendants and the unfinished Hull 42. *See* Dkt. 93 at ¶69. Claim 4, which Luken brings under RCW § 88.02.220 alleges that Indian Marine paid over $4 million in excess of the cost of construction for Hull 42. Luken alleges over $7.2 million damages in Claim 8 on ostensibly the same factual premise as Claim 4. *Id*. at 36–37.

apply the statute, and hold that extra payments made during the course of construction or payments over time are 'deposits' subject to RCW 88.02.770." *Id.*

CSL Defendants argue that Indian Marine made progress payments to CSL pursuant to invoices for work completed on Hull 42, and not cash or negotiable instrument deposits which would implicate the trust account requirements of RCW § 88.02.770. Dkt. 138 at 3. CSL Defendants also argue that even if Indian Marine's alleged overpayments qualified as cash deposits, under RCW § 88.02.770(4), the payment provisions of the construction contract for Hull 42 relieve any statutory obligation to place Indian Marine's payments into a deposit account. Dkt. 144 at 7. The Court agrees with the CSL Defendants on both accounts.

Luken concedes in his interrogatory responses that Indian Marine "did not have a formal deposit," and cites to no persuasive authority for treating a progress payment as such. Dkt. 131-1 at 16. Furthermore, RCW § 88.02.770(4) provides "[t]he [cash or negotiable instrument deposit] funds must remain in the trust account until the delivery of the purchased vessel. However, upon written agreement from the purchaser, the vessel dealer may remove and release trust funds before delivery." The construction contract between Indian Marine and CSL specified the terms of progress payments on Hull 42. *See* Dkt. 145-1 at ¶3.2; ¶4.2. These terms included the yacht's purchase price ($34 million), a payment schedule ("payments shall be due within ten business days after the date the Builder renders a billing to Customer"), and provided for monthly billing ("as the charges accrue"). *Id.* Even if excess progress payments could be construed as a deposit, the payment provisions of the construction contract would relieve CSL's obligations to place the funds in a trust account pursuant to RCW § 88.02.770(4). For these reasons, Indian Marine's claims under the vessel dealer trust account statute fail.

ORDER ON CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND ON MOTION TO
COMPEL - 12

Luken's "deposit" with CSL consisted of trade-in credit. This trade-in credit is not cash or a negotiable instrument, rendering Washington's vessel dealer deposit statute inapplicable. Similarly, Indian Marine's progress payments on Hull 42 are not a deposit, and even if they were, the provisions in the construction contract between Indian Marine and CSL would displace any obligation to place the funds in a trust account. Accordingly, CSL Defendants' motion for summary judgment on the vessel dealer statute claims (Luken's third, fourth, seventh, and eighth claims for relief) is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**.

**B. Defendant's Motion for Summary Judgment on the 2001 Guaranty.**

CSL reiterates its argument that the 2001 Guaranty only covers obligations relating to Borrower–Lender relationship between CSL and Luken, and asserts that all loan obligations were repaid by CSL in May 2008. Dkt. 138 at 15. For the same reasons discussed in Luken's motion for partial summary judgment, there is a dispute of material fact as to whether the loan has been repaid which precludes summary judgment on this issue. *See* Part I.A. Because this disputed issue is likely dispositive on all claims related to the 2001 Guaranty, the Court declines to construe whether the Guaranty applies only to the borrower–lender relationship at this time. Accordingly, CSL's motion for partial summary judgment on the 2001 Guaranty claim is **DENIED**.

### IV. CSL DEFENDANTS' MOTION TO COMPEL PRODUCTION

Defendants seek an order compelling Luken to produce certain state and federal tax records and other financial documents relating to his business dealings with CSL dating back to 2001. Specifically, Defendants seek production of the following tax returns and other financial documents that they claim relate to this lawsuit:

- Luken's personal tax returns from 2008 to present (RFP 53).
- Luken's financial statements from 2008 to present (RFP 54).

- All documents and communications related to sales or income taxes to be paid related to the purchase or exchange of yachts by Luken or any business or partnership in which he owns an interest from 2001 to present (RFP 55)
- Luken's income tax returns from 2001 to the present, showing all income, credits, and deductions related to CSL, CGI, any Christensen yacht, Donald Burns, Forrest Preston, and any other CSL customer (RFP 56)
- All documents and communications involving the IRS or any other state or local taxation authority related to the purchase or exchange of any Christensen yacht by Luken or any business or partnership in which he owns an interest from 2001 to present (RFP 57)
- Luken's sales tax filings with the state of Tennessee and Washington for the years 2001 to the present. (RFP 58).

Dkt. 118 at 4.

Defendants contend that Luken has placed his finances directly at issue and that the documents sought are necessary to defend against the various claims Luken alleges in the lawsuit. Luken argues that much of what Defendants seek has already been produced in discovery,[7] that the documents requested are overly broad in terms of timeframe, and that many documents contain information unrelated to the present litigation.

The Federal Rules of Civil Procedure permit broad discovery "regarding any matter, not privileged, that is relevant to the claims or defense of any party. Fed. R. Civ. P. 26(b)(1). Even if relevant material is inadmissible at trial, it is discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Although there is a public policy against the unnecessary public disclosure of tax returns, tax returns "do not enjoy an absolute privilege from discovery." *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975). Thus, some courts have utilized a two-part test to determine whether it is appropriate to compel the production of income tax returns. Courts must find that (1) the tax returns are

---

[7] While Luken has produced some of his tax returns, many are so heavily redacted that they provide little to no useful information. *See* Dkt. 124.

ORDER ON CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND ON MOTION TO
COMPEL - 14

relevant, and (2) "there is a compelling need for the returns because the information contained therein is not otherwise readily attainable." *United States v. Bonanno Organized Crime Family*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988); *See also, Aliotti v. Vessel Senora*, 217 F.R.D. 496, 497–98 (N.D. Cal. 2003).

1. <u>Luken's tax returns and financial records are discoverable.</u>

Contrary to Luken's assertions, his tax returns and financial records are discoverable because they are relevant to the claims and defenses in this case and contain information not readily attainable by the Defendants. The tax returns and financial documents sought are particularly relevant to both parties' claims and defenses related to the 2001 Guaranty between Luken and David Christensen, including whether the Guaranty was satisfied as Defendants contend. In sum, Luken has put his tax returns and related financial documents at issue through his claims in this case. He cannot advance the claims that he does while shielding relevant and highly pertinent information from discovery.

Luken is HEREBY ORDERED to disclose to Defendants the un-redacted documents responsive to Defendants' Requests For Production Nos. 53–58 by **April 2, 2018**. The disclosed information will be subject to the protective order already entered in this case. *See* Dkt. 32.

2. <u>Request for attorney's fees.</u>

This is the fourth discovery dispute the Court has been called on to resolve in this case. All four of these disputes have now been resolved against Luken.[8] *See* Dkt. 42; Dkt. 73; Dkt. 125. The Court has previously cautioned the parties that it would award attorney's fees to the prevailing party in subsequent discovery disputes. Dkt. 125 at 6. On the whole, Luken's conduct

---

[8] On a prior motion to compel Luken's responses to interrogatories, the Court awarded Christensen $2,000 in reasonable attorney's fees and costs. Dkt. 73.

in discovery reveals a pattern of unreasonable behavior which has needlessly driven up the cost of litigation in this matter. Luken and his attorney either do not grasp or have not taken to heart the message in the Court's prior orders regarding the responsibility of the parties to avoid unnecessary discovery disputes such as this one. The Court uses this as an opportunity to send the message more clearly. Pursuant to Fed. R. Civ. P. 11(c), the Court awards reasonable attorney's fees to Defendants associated with bringing the motion to compel in the amount of **$9,788.50**.[9] If Luken and his attorney continue to engage in a pattern of obstructionist tactics, the Court will consider additional sanctions.

## V. CONCLUSION

- Luken's Motion for Partial Summary Judgment [Dkt. #114] is **DENIED**.

- CSL Defendants' Motion for Partial Summary Judgment [Dkt. #138] is **DENIED IN PART** with respect to the 2001 Guaranty and **GRANTED IN PART** with respect to Luken's RCW § 88.02.770 claims (Claims 3,4, 7, and 8).

- CSL Defendants' Motion to Compel [Dkt. #118] is **GRANTED** and CSL Defendants are awarded reasonable attorney's fees in the amount of **$9,788.50**. Luken shall produce the documents responsive to Defendants' RFP Nos. 53–58 no later than **April 2, 2018**.

IT IS SO ORDERED.

Dated this 23rd day of March, 2018.

Ronald B. Leighton
United States District Judge

---

[9] The Court has reviewed the supporting documentation submitted by Defendants' Counsel and determines that the requested fee award is reasonable considering the circumstances in which this motion was brought. *See* Dkt. 120.